OPINION OF THE COURT

Per Curiam.

At the judicial nominating conventions held by the Democratic, Republican, Conservative and Liberal Parties to fill five vacancies in the office of Justice of the Supreme Court for the Eighth Judicial District, 10 candidates were nominated. The State Board of Elections, pursuant to subdivision 1 of section 7-116 of the Election Law, assigned, in descending order, a row on the election ballot to each party according to the number of votes each party polled for its gubernatorial candidate at the last preceding gubernatorial election, to wit: Row A, Democratic; Row B, Republican; Row C, Conservative; and Row D, Liberal. In assigning column positions in Row A, the board followed traditional policy by positioning candidates in the order of their certification by the Eighth Judicial District Democratic nominating convention. Column positions for candidates in each of the remaining three rows were also assigned according to the candidates’ order of certification, except where a candidate had accepted the nomination of more than one party and it was not possible to place his name on the ballot exactly in the order of certification by the respective judicial nominating convention. Due to the operational limitations of the voting machines, an alignment of the order of certification of such candidates was required as no candidate’s name could be placed in more than one vertical column. Thus, the candidates’ names, as aligned, were placed *920 in the first available column. Accordingly, the initial ballot would have appeared in the following format:
Row A (Democratic) Roberts Green Broughton Fallon Rogowski
Row B (Republican) Mintz Hewitt Bestry Doyle Gossel
Row C (Conservative) Roberts Green Broughton Fallon Gossel
Row D (Liberal) Mintz Green Broughton Doyle Gossel
However, candidate Rogowski, pursuant to subdivision 2 of section 7-116 of the Election Law, filed a timely demand to have his column position in Row A determined by lot. At the requested drawing, Rogowski’s name was selected first, followed by candidates Green, Broughton, Roberts and Fallon. Because of multiparty nominations of some of the candidates and voting machine limitations, the second ballot was structured as follows:
Row A (Democratic) Rogowski Green Broughton Roberts Fallon
Row B (Republican) Gossel Hewitt Bestry Mintz Doyle
Row C (Conservative) Gossel Green Broughton Roberts Fallon
Row D (Liberal) Gossel Green Broughton Mintz Doyle
Candidate Mintz then instituted this proceeding to compel the board to restore the ballot to its original format. Although Special Term dismissed petitioner’s application, the Appellate Division reversed the judgment and granted the relief requested. The board and candidates Rogowski and Gossel appeal to this court.
We conclude that the procedure followed by the board comports with the intent of the Election Law and was not unreasonable or arbitrary. No one contends, and indeed no one could contend, that the format of this initial ballot was without a rational basis. (Matter of Cooke v Lomenzo, 31 NY2d 244.) Nonetheless, by statute (Election Law, § 7-116, subd 2), where two or more candidates are nominated by one party for an office to which two or more persons are to be elected, a candidate may timely demand for a determination of ballot position by lot. In the instant case, Rogowski did so. As a result of the changes in column positions in Row A effected by his drawing, voting machine limitations required, as in the case of the proposed initial ballot, that column positions in the remaining three rows be altered, where necessary, to ensure that no candidate’s name appeared in more than one column.
We reject Mintz’ contention that this court’s decision in Matter of Cooke v Lomenzo (31 NY2d 244, supra) renders invalid the format of the second ballot, inasmuch as the *921 drawing demanded by Rogowski produced a change in column positions in Row A, thereby effecting, because of voting machine limitations, a displacement of column positions in other rows prejudicial to candidates of parties other than the Democratic Party.
In Cooke, the candidate, who requested a drawing to determine column positions in Row B had been nominated by political parties assigned Rows B and C on the election ballot. Because of multiparty indorsements and voting machine limitations, any change in column positions in Row B as a result of the drawing would have necessarily effected a change in column positions in Row A. In contrast in the instant case, changes in column positions in Row A, brought about by the timely request for a draw, effected concomitant changes in Rows B, C and D due to voting machine limitations. In our view, this distinction is crucial.
Row A occupies a unique position on election ballots where candidates have received multiparty indorsements. It is the only row in which candidates’ column positions can in all instances be assigned by the board according to traditional policy: that is, in order of the candidates’ certification by a party’s nominating convention. After Row A is set, cross indorsements of Row A candidates by other parties are aligned in the same vertical columns. Next, Row B is established, to the extent possible considering cross indorsements, in the order certified or as determined by lot, if requested. The same procedure is followed with respect to Rows C and D. Thus, irrespective of whether column positions in Row A are assigned by order of certification or by lot, column positions in rows beneath Row A remain, where necessary, dependent upon positions assigned to candidates in Row A. The same cannot be said, however, for any other row; column positions in Row A can never be dictated by column positions in lower rows, whether such positions are assigned by order of certification or by lot.
It was for this reason that the candidate in Cooke was precluded from having his column position in Row B determined by lot, inasmuch as any change in his column position in that row would have, because of voting machine limitations, necessitated a change in column positions of certain candidates in Row A to ensure that no candidate’s name appeared in more than one column. Any such change would have impaired the right of candidates of the party assigned *922 Row A to have their column positions determined either by traditional policy or by lot unaffected by voting machine limitations — a right which, although provided by statute to all candidates (Election Law, § 7-116, subd 1), takes on an absolute character, practically speaking, only for the party which polled the largest number of votes for its gubernatorial candidate in the last preceding election for that office. The same cannot be said in the present case.
Candidate Mintz, as well as the other candidates in Rows B, C and D, had no absolute right to have their column positions in those rows determined in order of their certification. That right, dependent as it was upon column positions assigned to candidates in Row A and voting machine limitations, remained dependent upon those factors when column positions in Row A were assigned by lot upon a timely demand of Rogowski. Inasmuch as the column positions in Rows B and D assigned to Mintz were subject to the column positions assigned to candidates in Row A, irrespective of how that assignment was accomplished, it makes little sense to preclude a candidate in Row A from exercising a statutorily granted, and otherwise unqualified, right to have his column position in that row determined by lot.
Accordingly, the order of the Appellate Division should be reversed, and the judgment of the Supreme Court reinstated, without costs.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion; Judge Gabrielli concurs in result only.
Order reversed, without costs, and the judgment of Supreme Court, Albany County, reinstated.