OPINION OF THE COURT
Leonard B. Austin, J.
In this matter, which was brought via the simplified procedure for the resolution of disputes as provided in CPLR 3031 et seq., the parties, plaintiff, Eric S. Brown, and defendant, John A. DeGrace, constituting, respectively, the Democratic and *392 Republican members of the Nassau County Board of Elections, ask this court to determine the order of the candidates on the November 5, 2002 ballot for the office of Judge of the District Court of Nassau County, Second District.
Background
There are three Second District Court seats to be filled in this year’s election. Each of the Republican and Democratic Parties have nominated candidates for the three vacancies. On their designating petitions, the Republicans nominated Philip M. Grella, Dana Mitchell Jaffe and Francis D. Ricigliano, in that order. The Democrats, on their designating petitions, nominated Fred J. Hirsh, Dominic Villoni and Joseph P. Spinola, in that order.
Many of the Republican and Democratic designees also filed petitions to run on minor party lines. After the primaries for those lines were held, Commissioner DeGrace caused a draft ballot to be created. That ballot was set as follows:
Republican (Row A) Grella Jaffe Ricigliano
Democratic (Row B) Hirsh Villoni Spinola
Independence Jaffe Ricigliano Spinola
Conservative Jaffe Ricigliano Spinola
Liberal Grella Jaffe Ricigliano
Right to Life Grella Ricigliano
Green Hirsh Jaffe Spinola
Working Families Hirsh Jaffe Villoni
In her affidavit, Republican Deputy Elections Commissioner Carol DeMauro Busketta suggests that this is the only ballot configuration which, under the circumstances of minor party endorsements, could have been achieved.
Commissioner Brown disagrees with the DeGrace draft ballot and has, instead, proposed the following candidate alignment:
Republican Grella Jaffe Ricigliano
*393 [[Image here]]
Independence Spinola Jaffe Ricigliano
Conservative Spinola Jaffe Ricigliano
Liberal Grella Jaffe Ricigliano
Right to Life Grella Ricigliano Green Spinola Jaffe Hirsh
Working Families Jaffe Hirsh Villoni
Both proposed ballots appear to satisfy the requirements of ballot formation.
At issue is the question of primacy of the establishment of ballot position. In this regard, Commissioner DeGrace argues, and relies upon, the longstanding “tradition” that, when possible, the ballot that is generated by the Board of Elections reflects the order of the candidates on their designating petition. Commissioner Brown contends that there is no legal basis for that approach and argues that, as the Democratic Commissioner, he is entitled to set his party’s ballot order as he determines best.
Both sides, in their submissions, and on oral argument, agree that there is no statutory or case law or administrative code in the State of New York which addresses this issue. In fact, research reflects that there is no case law dealing with this issue anywhere in the United States. Further, both sides agree that although the law prefers to minimize the number of columns on the ballot for each office, it is necessary, due to the overlapping minor party endorsements, that the ballot in question must have four columns for the three vacancies to be filled in the general election.
Discussion
The Board of Elections is charged with the responsibility of creation of the ballot and, in so doing, establishing the order in which candidates appear thereon. (Election Law § 7-116 [2].) For the purposes of an election to a position for which more than one vacancy exists, it is to be treated as a single office. (See, Mastrella v Commissioners of Elections for Monroe County, 58 Misc 2d 31 [Sup Ct, Monroe County 1968].) Here, the commissioners have, by their disagreement, abdicated their statutory duty and have thus placed the issue before this court. (Election Law § 16-104 [1].) The parties, as Elections Commis *394 sioners, in bringing this proceeding, have agreed that this is the proper forum for the resolution of this dispute. (See, e.g. Matter of Harwood v Dodd, 78 AD2d 644 [2d Dept], affd 51 NY2d 836 [1980].) Additionally, counsel for the respective parties represented, during oral argument, that they were authorized to appear for, and bind, the various candidates on Rows A and B. Thus, there was no need to adjourn this matter to permit their joinder as necessary parties under CPLR 1001 (a).
Generally speaking, the case law suggests that where the Board of Elections is claimed to have made an error in the establishment of the ballot, an aggrieved candidate may challenge the manner in which the Board constituted the ballot. (Election Law § 16-104.) The ballot created by the Board of Elections will not be disturbed, under the guise of abuse of discretion, when the change sought is intended to give one candidate “a supposed advantage” and the names on the ballot are otherwise legally set. (Matter of Luchowski v Lawley, 26 Misc 2d 148 [Sup Ct, Erie County 1960].)
Traditionally, with regard to Supreme Court elections, the courts of this state have recognized that in placing candidates on the ballot in the same order as their names appeared on the certificate of nomination filed after the judicial convention is not an abuse of discretion. (See, Matter of Mintz v Cuomo, 45 NY2d 918 [1978]; see also, Matter of Cooke v Lomenzo, 31 NY2d 244 [1972] [where the Court of Appeals found that placing Court of Appeals candidates on the ballot in the order of the certificate of nomination, unless a drawing is demanded, is not arbitrary and capricious].) Likewise, it is undisputed that the Nassau County Board of Elections has observed the tradition of relying upon the designating petitions for the order of the candidates on the ballot, unless minor party endorsements or a draw for ballot position (see, O’Shaughnessy v Dodd, 63 NY2d 812 [1984]) compel a different result, so as to minimize the number of columns used for that office. (See stipulated facts H9.)
Although our case law recognizes this “tradition” of ballot placement, there is nothing that makes it mandatory. While the Commissioners of Election perform a ministerial act in the creation of the ballot within certain statutory and due process parameters, it must be recognized that they are also representatives of the two dominant political parties. Thus, their role is also inherently partisan. It would be disingenuous for this court to ignore that fundamental fact. Certainly, the oral argument on this matter well reflected that concept as well. That *395 Commissioner Brown has exercised his political role more so than his democratic predecessors does not mean that the cited 30-year tradition prevents him from doing so. As a result of the inability of the commissioners to reach an agreement, there is now a deadlock which requires this court’s intervention.
The Election Law only addresses the deadlock of Elections Commissioners once. That is, when they cannot agree on who will serve as president and secretary, they draw lots. (Election Law § 3-212 [1].) There is no concomitant procedure for the circumstances presented herein.
Commissioner DeGrace argues that plaintiff should be estopped from derogating the traditional approach to ballot formation. He claims that candidates on Row A who might have sought a draw for ballot position under Election Law § 7-116 (2), refrained from so doing in reliance upon “tradition.” This argument is without merit. Although the ballot position of candidates on Row A is entitled to primacy, the ballot order of their opponents is subject to change based upon minor party endorsements and/or a draw for ballot position by Row B. See, Matter of Mintz v Cuomo (supra at 921-922), where the Court of Appeals found:
“Row A occupies a unique position on election ballots where candidates have received multiparty indorsements. It is the only row in which candidates’ column positions can in all instances be assigned by the board according to traditional policy: that is, in order of the candidates’ certification by a party’s nominating convention. * * *
“Candidate Mintz, as well as other candidates in Rows B, C and D, had no absolute right to have their column positions in those rows determined in order of their certification.”
The Row A candidates who were placed on the ballot in accordance with their designating petitions have no reasonable expectation that they would line up against any particular Row B candidate. This is especially true when it is remembered that they were competing with some, if not all, of their Row B opponents for the minor party lines. Simply put, there is nothing legally sacrosanct in the ballot position of the candidates vis-a-vis their order on their designating petitions. That Boards of Elections throughout New York have utilized that order in years past, as a matter of convenience and, perhaps, conflict avoidance, is not of legal moment.
Also unavailing is Commissioner DeGrace’s in terrorem argument that allowing Commissioner Brown, as the Commissioner *396 representing Row B’s political party, to eschew the “tradition” would open the door to an endless back and forth between the commissioners which would put ballot formation into a permanent limbo. While it is regrettable that the competing political interests of the commissioners prevents their sitting down and resolving this issue without resorting to court intervention, their steadfast adherence to “tradition” or its abrogation, benefits no one; least of all the candidates or the public.
Keeping in mind that “[t]he ultimate test of fairness is that the ballot furnish each elector a reasonable opportunity to express his [or her] choice * * * ” (Matter of Luchowski v Lawley, supra at 149), it is clear that both of the competing ballot formats urged by the party commissioners satisfies this standard. Yet, they remain at loggerheads.
This court should be extremely cautious and circumspect before entering into the domain of the Elections Commissioners despite the fact that they have invited this court’s intervention in their dispute which has delayed the timely mailing of military ballots and jeopardizes the mailing of absentee ballots. Thus, in fashioning a remedy which satisfies the competing interests of the parties, and in an attempt to avoid similar applications in the future, it is necessary for this court to impose a procedure by which the commissioners can perform their statutory duty, in the context of their political role. In so doing, the court is mindful of preventing an “Alphonse and Gaston” situation which would perpetually stymie the reaching of a consensus in formulating a ballot. The procedure herein provided is intended to be a model to avoid future disputes and deadlocks while taking into account that the political party which enjoys Row A status can change every four years.
Thus, this matter is remanded to the Board of Elections with the following instructions for the formation of the ballot:
1. Commissioner DeGrace, as the Row A Commissioner, shall designate the candidate to be placed in the first Row A ballot position* for District Court Judge, Second District. Should he so desire, Commissioner DeGrace may opt to leave the first ballot position blank so long as there are no more than four columns utilized for this position.
2. Commissioner Brown, as the Row B Commissioner, shall then be entitled to designate a candidate to be placed in the first Row B ballot position. Should he so desire, Commissioner *397 Brown may opt to leave the first ballot position blank so long as there are no more than four columns utilized for this position. If minor party endorsements of the designated Row A candidate preclude any Row B candidate from being placed in that column, Commissioner Brown shall be deemed to have opted to leave that column blank.
3. Commissioner DeGrace shall then designate the candidate to be placed in the second ballot position on Row A or he may, as herein provided, opt to leave that space blank.
4. Commissioner Brown shall then designate the candidate to be placed in the second ballot position on Row B or he may, as herein provided, opt to leave that space blank. If minor party endorsements of the designated Row A candidate preclude any Row B candidate from being placed in that column, Commissioner Brown shall be deemed to have opted to leave that column blank.
5. Commissioner DeGrace shall then designate the candidate to be placed in the third ballot position on Row A or he may, as herein provided, opt to leave that space blank.
6. Commissioner Brown shall then designate the candidate to be placed in the third ballot position on Row B or he may, as herein provided, opt to leave that space blank. If minor party endorsements of the designated Row A candidate preclude any Row B candidate from being placed in that column, Commissioner Brown shall be deemed to have opted to leave that column blank.
7. If there remains any Row A candidate, he/she shall occupy the fourth ballot position.
8. If there remains any Row B candidate, he/she shall occupy the fourth ballot position.
In accomplishing the foregoing, the parties shall take into account the minor party nominations of the various candidates. Each commissioner shall be bound by the choice of the other in making his selection and in finalizing the form of the ballot.
This procedure shall be accomplished by not later than 10:00 a.m. on October 18, 2002. In the event that the foregoing has not been accomplished by the deadline herein established, counsel and the parties shall appear before the undersigned at 11:00 a.m.
If an agreed ballot is established within the time frame herein set forth, then counsel are directed to appear before this court at 2:00 p.m. to settle an order confirming the form of the ballot. The order to be settled shall, in accordance with the *398 agreement of the parties, amend the political calendar so as to extend the time for the postmarking of military ballots for the Second District (Town of Hempstead and City of Long Beach) to midnight of Election Day and extend the time to receive such ballots to three days after they are otherwise due according to the established political calendar.

 For the purpose of this decision, the term “ballot position” is deemed to be synonymous with the term “column.”